[No. 43871. En Banc. April 22, 1976.]

SIMPSON TIMBER COMPANY, *Respondent*, v. OLYMPIC AIR POLLUTION CONTROL AUTHORITY, *Appellant*, THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

*Fred D. Gentry* (of *Bean, Gentry & Rathbone*), for appellant.

*Gerald L. Whitcomb, Inc., P.S.,* for respondent Simpson Timber Company.

*Slade Gorton, Attorney General,* and *Robert O. Sailer, Assistant,* for respondent State.

HUNTER, J.—On August 1, 1972, Simpson Timber Company (respondent) conducted a slash burn of forest material on 78 acres of its property situated about 9 miles west of Olympia. The burn produced noticeable smoke and particulate fallout in the Olympia area, which caused annoyance to some citizens of Olympia. As a result of these events, the Olympic Air Pollution Control Authority (appellant) cited respondent for violation of appellant's regulation I, section 9.03 (c)[1] and subsequently assessed a civil penalty of $250 against respondent. Respondent appealed this determination to the Pollution Control Hearings Board and upon application, the Department of Natural Resources (DNR) was allowed to intervene. The Pollution Control Hearings Board found that respondent had committed no violation and overturned the penalty assessment. Appellant appealed this decision to the superior court, which affirmed the board's decision in a brief order. It is from this order that Olympic Air Pollution Control Authority appeals.

According to the findings of fact entered by the Pollution Control Hearings Board, which are undisputed, the purposes of the burn were the abatement of a forest fire haz-

---

[1]Regulation I, section 9.03 (c) of the Olympic Air Pollution Control Authority states:

"No person shall cause or allow the emission of particles of such size and nature as to be visible individually in sufficient number to cause annoyance to any other person. This restriction shall apply only if such particles fall on real property other than that of the person responsible for the emission."

ard and the preparation of the site for reforestation. The burn took place pursuant to a permit issued at the site of the burn by an authorized DNR employee. The permit was issued in compliance with the DNR's smoke management procedures and plan[2] and only after the Department of Ecology was notified and informed about the facts of the burn. It was subject to automatic suspension in the event an air pollution episode was declared by the Department of Ecology.[3] The burn itself was conducted in full compliance with the conditions of the permit.

▮ The precise issue presented by this appeal is whether a person who conducts a burn in accordance with a DNR permit validly issued pursuant to RCW 70.94.660, is also subject to the regulations of local air pollution control authorities. This is a question of statutory interpretation which requires us to determine the intent of the legislature based on the statutory text as a whole and the general purpose of the act. *See Greenwood v. State Bd. for Community College Educ.*, 82 Wn.2d 667, 671, 513 P.2d 57 (1973). As discussed below, we believe that the legislature intended the DNR to have exclusive control and authority over the types of burns listed in RCW 70.94.660, and thus to preempt the area covered by that statute. Consequently, local air pollution control authority regulations do not apply where burns are conducted in compliance with permits properly issued by the DNR under RCW 70.94.660.

RCW 70.94.660 is contained in the Washington Clean Air Act, RCW 70.94. Specifically, it states that:

> The department of natural resources shall have the responsibility for issuing and regulating burning permits required by it relating to the following activities declared to be for the protection of life or property and/or in the public welfare:
> (1) Abating a forest fire hazard;
> (2) Prevention of a fire hazard;

---

[2]*See generally* WAC 18-12-120.

[3]*See generally* RCW 70.94.670, .710, .715, and RCW 76.04.150 and RCW 76.04.170.

(3) Instruction of public officials in methods of forest fire fighting; and

(4) Any silvicultural operation to improve the forest lands of the state.

RCW 70.94.660. The legislature added this provision to the Washington Clean Air Act in 1971, along with several other amendments which are relevant to an interpretation of this statutory provision. *See* Laws of 1971, 1st Ex. Sess., ch. 232, §§ 1-3, 5, pp. 1052-54; Laws of 1971, 1st Ex. Sess., ch. 233, §§ 1, 2, pp. 1055-56.

Prior to the 1971 amendments to the Washington Clean Air Act,

> smoke from fires set in the course of any forest harvest operation or to abate a forest fire hazard, or from fires set . . . for the purpose of weed abatement, the prevention of a fire hazard, or the instruction of public employees in the methods of fighting fires . . .
>
> . . . [and] smoke from agricultural fires set by, or permitted by, the county agricultural agent of any county, if such fire is set or permission given in the performance of the official duty of such county agricultural agent for the purpose of disease prevention

were specifically exempted from the act. *See* Laws of 1967, ch. 238, § 42, p. 1267, *amending* Laws of 1957, ch. 232, § 25, p. 916. The 1971 amendments repealed this provision and added two statutory sections that created a permit requirement to regulate these previously exempt types of fires. *See* Laws of 1971, 1st Ex. Sess., ch. 232, §§ 1, 2, 7, pp. 1052-54. In addition to the fires covered by RCW 70.94.660, nonforest related fires now require permits under another statutory provision, RCW 70.94.650, which provides:

> Any person who proposes to set fires in the course of the following:
>
> (1) Weed abatement,
>
> (2) Instruction in methods of fire fighting (except forest fires), or
>
> (3) Disease prevention relating to agricultural activities, shall, prior to carrying out the same, obtain a permit from an air pollution control authority or the department of ecology, as appropriate. Each such authority and the

department of ecology shall, by rule or ordinance, establish a permit system to carry out the provisions of this section except as provided in RCW 70.94.660.

We believe this statutory scheme indicates that the legislature intended the responsibility for regulating and controlling these various potential pollution sources under the Washington Clean Air Act to rest in separate bodies. The legislature did not intend that the situations listed in RCW 70.94.660 would be regulated by other than the DNR. This result is suggested not only by the language of RCW 70.94.660, which specifically assigns responsibility to the DNR for the burns listed therein, but also by the language in RCW 70.94.650(2) and (3), which specifically excludes forest fires and the situations covered by RCW 70.94.660 from the responsibility of the Department of Ecology and air pollution control authorities.

This interpretation is further supported by another of the 1971 amendments. RCW 70.94.690 (Laws of 1971, 1st Ex. Sess., ch. 232, § 5, p. 1054) provides:

> *In the regulation of outdoor burning* not included in RCW 70.94.660 *requiring permits from the department of natural resources, said department* and the state, local, or regional air pollution control authorities will cooperate in regulating such burning so as to minimize insofar as possible duplicate inspections and separate permits while still accomplishing the objectives and responsibilities of the respective agencies.
>
> Permits shall be withheld by the department of natural resources when so requested by the department of ecology if a forecast, alert, warning or emergency condition exists as defined in the episode criteria of the department of ecology.

(Italics ours.) This section deals with outdoor burning not covered by RCW 70.94.660 and states that in such cases requiring permits from the DNR, the DNR and state, local, or regional authorities are to cooperate in the regulation of such burning. The specific exclusion of the situations in RCW 70.94.660 clearly indicates that cooperation in regulation is not intended under that section and thus indicates

that the DNR was intended to have exclusive authority under RCW 70.94.660. If the legislature had intended the DNR to have nonexclusive jurisdiction under RCW 70.94.660, it could easily have done so by including similar language stating that smoke regulation under that section will be achieved through cooperation.

Moreover, RCW 70.94.650, which is the statutory provision giving air pollution control authorities and the Department of Ecology responsibility for regulation and permits in the areas of weed abatement and disease control, contains a statement that specifically prevents exclusive jurisdiction under that section.

> Nothing in this section shall relieve the applicant from obtaining permits, licenses or other approvals required by any other law . . .

RCW 70.94.650. The absence of a similar provision in RCW 70.94.660 indicates the legislature intended the DNR to have complete and exclusive control in the situations described in that section. This result is consistent with the legislature's declaration in RCW 70.94.011 that the purpose of the Washington Clean Air Act is to provide "for an appropriate distribution of responsibilities between the state, regional, and local units of government, and for cooperation across jurisdictional lines in dealing with problems of air pollution."

We therefore conclude, as heretofore stated, that the DNR has exclusive authority and jurisdiction in the areas listed in RCW 70.94.660. Under the Washington Clean Air Act, it has the sole responsibility for the regulation of the burns and issuance of permits within that section. Where, as in the instant case, there is full compliance with RCW 70.94.660, local air pollution control authorities are preempted from the area; they, in effect, have no jurisdiction and cannot enforce their regulations. Cf. *Edmonds School Dist. 15 v. Mountlake Terrace*, 77 Wn.2d 609, 614, 465 P.2d 177 (1970).

■ As a final note, we point out that this interpretation does not in any way eliminate adequate sanctions for viola-

tions of the Washington Clean Air Act where an individual, unlike the respondent in this case, has not complied fully with RCW 70.94.660. The 1971 amendments require the DNR to comply with the air quality standards provided by the act. *See* Laws of 1971, 1st Ex. Sess., ch. 232, § 3, p. 1053. The issuance and use of permits issued pursuant to RCW 70.94.660 must be conditioned "to comply with air quality standards established by the department of ecology after full consultation with the department of natural resources." RCW 70.94.670. Other statutory provisions, again, enacted in the 1971 amendments, give the DNR full authority to refuse, suspend, or revoke permits issued by it whenever necessary to prevent air pollution or to protect air quality. *See* RCW 76.04.150; RCW 76.04.170; Laws of 1971, 1st Ex. Sess., ch. 233, §§ 1, 2, pp. 1055-56. Lastly, the Washington Clean Air Act itself assures that the possession of a permit issued pursuant to RCW 70.94.660 will not provide immunity for violations of the act. RCW 70.94.370 states:

No provision of this chapter .. . . is a limitation:

. . .

(3) On the power of a state agency in the enforcement, or administration of any provision of law which it is specifically permitted or required to enforce or administer.

(4) On the right of any person to maintain at any time any appropriate action for relief against any air pollution.

We are convinced that the preemption by DNR of the specific situations listed in RCW 70.94.660 will in no way hinder the implementation and enforcement of the Washington Clean Air Act.

The order of the trial court is affirmed.

ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., and RUMMEL, J. Pro Tem., concur.