[No. 44841.  En Banc.  September 1, 1977.]

ENGLISH BAY ENTERPRISES, LTD., *Appellant*, v. ISLAND COUNTY, ET AL, *Respondents*.

*Lawrence B. Guisinger,* for appellant.

*David F. Thiele, Prosecuting Attorney,* and *Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* by *Peter L. Buck, Louis D. Peterson,* and *Richard R. Wilson,* for respondents.

DOLLIVER, J.—The appellant is a Canadian corporation engaged in the business of clam harvesting on the tidelands near Camano Island. On April 5, 1974, appellant filed under protest a substantial development permit application with respondent Island County, seeking approval to harvest clams from all of its leased private tidelands in Livingston

Bay and Port Susan Bay. Respondent's planning commission considered appellant's application at four public hearings and recommended approval of the application subject to certain conditions. The Board of County Commissioners then considered the matter and denied the application. The decision was appealed to the Shorelines Hearings Board (hereafter the Board) alleging that its operation was not subject to the Shoreline Management Act of 1971 (RCW 90.58) or, alternatively, that its project was consistent with the Shoreline Management Act of 1971. The Board's decision was appealed to the Superior Court for Thurston County and upheld by order dated August 2, 1975.

The appellant possesses a permit from the Department of Fisheries which allows clam harvesting. To comply with the State Environmental Policy Act of 1971 (RCW 43.21C), the department issued a negative declaration with respect to an adjacent 80–acre parcel of tidelands for a predecessor permit which expired on December 31, 1974, concluding that clam harvesting under the terms of the permit was a minor action and the effects were not significant. No negative declaration was made in regard to the permit in effect after December 31, 1974.

The appellant harvests clams mechanically, using a self–propelled watercraft to which is attached a cutterhead with water nozzles and a steel mesh conveyor belt. A jet of water shoots through each nozzle and scours the ocean bed. The mechanism scoops the top 12 inches of bottom material onto a moving conveyor belt. The smaller matter falls through the mesh; the larger matter is sorted and the spoils are dumped into the water.

The Board made the following findings of fact: Much of the silt which is churned up does not fall into the trench but remains suspended in the water for a significant amount of time; after an area is harvested, the trench remains visible and may create a safety hazard; since appellant began its operations, the property owners have noticed an accumulation of silt and organic materials upon what were once clean sand and gravel beaches; the noise

from appellant's motors disturbs the beach residents and may be heard day or night 7 days a week; appellant's operation imperils the aesthetics of the bay; plants (eelgrass, widgeon grass and bulrush), and the animals (snowgeese, Canadian geese and ducks), which feed on intertidal marine invertebrates and the plants, could be adversely affected by the operation.

The Board concluded: Clam harvesting, in the manner conducted by appellant, involves "dredging," "dumping," and "filling," and constitutes a "development" within the meaning of the Shoreline Management Act of 1971. RCW 90.58.030(3)(d). Such clam harvesting is a "substantial development" as described in RCW 90.58.030(3)(e), because the cost of the operation exceeds $1,000 and the clam harvesting "materially interferes with the normal public use of the water or shorelines of the state". RCW 90.58.030(2)(d). The State Environmental Policy Act of 1971 is supplementary to and does not replace other statutory and regulatory obligations of appellant. RCW 43.21C.060. The Board has jurisdiction over the persons and subject matter in this proceeding. The Board further stated that its holding does *not* preclude all mechanical clam harvesting on shorelines of the state, but it does require that the Shoreline Management Act of 1971 concerns be properly met.

The first issue before us is whether the Board erred in assuming jurisdiction over the appellant. In this regard, RCW 90.58.140(2) provides:

> No *substantial development* shall be undertaken on shorelines of the state without first obtaining a permit from the government entity having administrative jurisdiction under this chapter.

(Italics ours.) RCW 90.58.030(3) provides the following definitions:

> (d) "Development" means a use consisting of the construction or exterior alteration of structures; *dredging;* drilling; *dumping; filling;* removal of any sand, gravel or minerals; bulkheading; driving of piling; placing of obstructions; or any project of a permanent or temporary

nature which interferes with the normal public use of the surface of the waters overlying lands subject to this chapter at any state of water level;

(e) "Substantial development" shall mean any development of which the *total cost or fair market value exceeds one thousand dollars, or* any development which *materially interferes with the normal public use of the water or shorelines of the state;* except that the following shall not be considered substantial developments for the purpose of this chapter . . .

(Italics ours.)

■■ The appellant contends that the statutory definition of "development" does not explicitly include clam harvesting. However, the Board found, and we find here, that it is not the goal of the appellant's activity which governs but rather it is the method employed. The appellant's operation involves the removal of earth from the bottom of the bay. In the plain and ordinary sense of the term, this procedure is "dredging." The Board found that this activity constitutes dredging; the interpretation of the Board is to be given great weight. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975). Furthermore, during the hearing before the Island County Planning Commission, the appellant's attorneys, the president of English Bay, an employee of English Bay, and an employee of the United States Fish and Wildlife Service all referred to appellant's machine as a "dredge."

The Shoreline Management Act of 1971 is to be broadly construed in order to protect the state shorelines as fully as possible. *See* RCW 90.58.900. A liberal construction of the act is also mandated by the State Environmental Policy Act of 1971. *See* RCW 43.21C.030(1) and RCW 43.21C.020(3). The legislature expressly required that dredging operations obtain permits, and the plain and ordinary meaning of "dredging" encompasses English Bay's operation.

The appellant also contends that its operation is not a substantial development because it does not "materially interfere[s] with the normal public use of the water or shorelines . . ." However, the record contains substantial

evidence of a material interference. Additionally, the Board finding that the cost of the operation exceeds $1,000 remains unchallenged. Under RCW 90.58.030(3)(e), this alone would be sufficient to find a "substantial development."

■ The next issue before the court is whether the decision of the Shorelines Hearings Board is "arbitrary and capricious," or "clearly erroneous" under the administrative procedures act, RCW 34.04.130(6). In the course of judicial review, due deference will be given to the specialized knowledge and expertise of the administrative agency. The agency decision is "arbitrary and capricious" if it is willful and unreasoning action in disregard of facts and circumstances. *Northern Pac. Transp. Co. v. Utility & Transp. Comm'n,* 69 Wn.2d 472, 418 P.2d 735 (1966). The "clearly erroneous" standard was defined in *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969):

> Perhaps the best description of the "clearly erroneous" test was set forth by the United States Supreme Court in *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*See also Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 552 P.2d 674 (1976); *Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d 551, 527 P.2d 1121 (1974).

We have examined the transcript from the planning commission meetings and the affidavits that were before the Shorelines Hearings Board. We find there is substantial evidence to support each of the Board's findings of fact. Furthermore, under the standard announced in *Ancheta,* we are not persuaded that an error has been made. Consequently, we find that the decision of the Board was neither "arbitrary and capricious" nor "clearly erroneous."

■ Finally, appellant raises the issue of whether the Department of Fisheries has the exclusive control over matters dealing with harvesting of shellfish. Appellant relies primarily upon *Simpson Timber Co. v. Olympic Air Pollution Control Authority,* 87 Wn.2d 35, 549 P.2d 5 (1976), in support of its contentions that the Department of Fisheries has exclusive control over its operation and that the Shorelines Hearings Board is without jurisdiction. That case turned on specific statutory language in the Washington Clean Air Act. RCW 70.94. There are no general principles established by this case regarding the exercise of concurrent jurisdiction by two or more state agencies. In *Simpson,* we found that the legislature intended the Department of Natural Resources to have exclusive control and authority over the types of burns listed in RCW 70.94.660 and thus preempted the area covered by that statute. This result was suggested not only by the language of RCW 70.94.660 which specifically assigns responsibility to the Department of Natural Resources for the burns listed therein, but also by the language of RCW 70.94.650(2), (3), which specifically excludes forest fires and the situations covered by RCW 70.94.660 from the responsibility of the Department of Ecology and air pollution control authorities. The Department of Fisheries' grant of authority (RCW Title 75) makes no similar grant of exclusive control over the harvesting of shellfish; the requirements of the Shoreline Management Act of 1971 must be met by appellant.

We affirm the Shorelines Hearings Board and the Superior Court in all respects.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.