[No. 53220-6. En Banc. March 5, 1987.]

KITSAP COUNTY, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents,* E. SHIPPEN WILLING, *Appellant.*

*C. Danny Clem, Prosecuting Attorney,* and *Scott M. Missall, Deputy,* for appellant Kitsap County.

*Peter J. Eglick,* for appellant Willing.

*Kenneth O. Eikenberry, Attorney General,* and *Patricia H. O'Brien* and *Daniel W. Wyckoff, Assistants,* for respondent State.

*Gregory P. Norbut,* for respondent Francklyn.

DOLLIVER, J.—Kitsap County appeals from a superior court decision reversing a Shorelines Hearings Board order. The Board had approved the application of the Washington Department of Natural Resources for a substantial development and conditional use permit for clam harvesting. The County assigns error only to the court's failure to enter a requested conclusion of law and does not dispute the overall outcome of the decision. Respondents Department of Natural Resources and Department of Fisheries cross–appeal for reversal of the decision of the court. We grant

the cross appeal and reinstate the order of the Shorelines Hearings Board.

Natural Resources manages four tracts of subtidal public lands in Agate Pass, located in Kitsap County between Bainbridge Island and the Kitsap Peninsula. From 1972 to 1978, Natural Resources leased three of the four tracts to Gilbert Francklyn for the purpose of harvesting clams through use of a mechanical clam harvester. The harvesting activity is regulated by a permit process administered by Fisheries.

In *English Bay Enters. v. Island Cy.,* 89 Wn.2d 16, 568 P.2d 783 (1977), we held mechanical clam harvesting was subject to the Shoreline Management Act of 1971, RCW 90.58. On May 17, 1978, Natural Resources filed an application with Kitsap County for a substantial development and conditional use permit under the shoreline management act for future clam harvesting in Agate Pass. The Kitsap County Board of Commissioners denied the permit. Natural Resources and Fisheries appealed to the Shorelines Hearings Board.

In April 1980, the Shorelines Hearings Board conducted a 4-day hearing regarding the permit. The Board considered exhibits, written testimony, hearing memoranda of the parties, and the live testimony of over two dozen witnesses. The Board also viewed the site of the proposed harvesting. The testimony indicated Agate Pass is one of the richest clam beds in Puget Sound. The Board found it to be one of the few subtidal areas in the state where clams set and grow abundantly, due to its optimum combination of swift water currents and coarse substrate. During the years of mechanical harvesting on the three tracts, the annual yield was from approximately 240,000 to approximately 465,000 pounds of clams. The Board found restoration of the clam stocks occurred naturally in the area, allowing the tracts to produce a sustained maximum yield of as much as 274,000 pounds annually.

The Board reviewed the various issues raised regarding the effects of the harvesting on the environment, including

the clam resource, siltation, water quality, marine vegetation, lingcod spawning grounds, and noise. No detriment to the clam resource from the harvesting was found by the Board nor did it find a siltation problem would occur since the coarse substrate in the area provides minimal fine material of the type which would cause siltation. Harvesting would not adversely affect water quality in the area. Marine vegetation in the area would not be affected, since little eelgrass or kelp grew on the coarse substrate, and the Puget Sound water was sufficiently nutrient rich to support the marine food chain. Although the harvesting had produced noise disruption in the past, the Board ordered limits on noise levels and hours of operation to mitigate noise impact.

With regard to the lingcod spawning grounds, the Board's finding of fact stated:

Areas within the tracts have been identified by Department of Fisheries (DOF) as potential ling cod spawning areas. Because of this, DOF will not allow mechanical clam harvesting there until it carries out further studies to determine if, in fact, any damage to ling cod could occur. These areas are approximated by the cross–hatching on exhibit R–20.

The results of the studies just described should be presented to both Kitsap County and the Department of Ecology.

The potential lingcod spawning areas identified by the Department of Fisheries within the tracts were therefore not included under this harvesting permit.

The Board further stated the use of mechanical clam harvesting is in an incipient stage in Puget Sound, so all parties concerned would benefit from careful review of its effects. It made this finding:

The present application of DNR should therefore be permitted under a permit for a fixed term to allow re–evaluation based upon facts which will arise in the future.

A baseline study should also be conducted on the unharvested northeast tract . . . to inventory species and quantity of clams and other major marine plant and animal species. This must occur prior to harvesting of the

northeast tract so as to provide a basis for before and after comparison. This study should be conducted by the Department of Fisheries and the results presented to Kitsap County and the Department of Ecology.

The Board therefore concluded issuance of the permit would meet the requirements of both the shoreline management act and the Kitsap County Shoreline Master Program provided certain conditions were imposed: (1) the permit must expire after 5 years; (2) the noise level and hours of operation must be limited; (3) the baseline study of the northeast tract must be conducted; and (4) the lingcod spawning area study must be conducted. The Kitsap County decision was reversed and remanded for issuance of the permit containing these specified conditions.

Kitsap County appealed the Board decision to the Superior Court. Based on the challenge by the County, joined by intervenor E. Shippen Willing, a resident of Agate Pass, the Superior Court reversed the Board's decision based on the inadequacy of the environmental impact statement. We reversed. *Kitsap Cy. v. Department of Natural Resources,* 99 Wn.2d 386, 662 P.2d 381 (1983). Upon return to the Superior Court for review of the Board decision on the merits and after review of the record and hearing oral arguments, the Superior Court on October 11, 1985, entered an order affirming the Board's decision.

In a motion for reconsideration, Kitsap County and Willing argued the Board acted without authority in conditioning issuance of the permits upon the two studies and did not have sufficient environmental information before it to issue the permits. On November 12, 1985, the court revised its earlier opinion and reversed the Board. The court agreed with the County and Willing that the Board acted improperly by requiring the studies, but refused to adopt their proposed conclusion of law which stated the Board did not have sufficient environmental information with which to render its decision. Instead, the court's conclusion of law stated:

By the time the Shorelines Hearings Board makes a decision, all information regarding harm or potential

harm to the environment to be considered in arriving at a decision, including applicable environmental parameters, must be before the Board in final form.

The appeal to this court is based on the court's failure to adopt the appellants' proposed conclusion of law. The respondents cross–appeal the reversal of the Board and the conclusion that the Board acted improperly by requiring the studies. We accepted certification of this appeal from the Court of Appeals pursuant to RCW 2.06.030.

Two issues are before the court. First, Kitsap County and Willing contend the Superior Court erred in not adopting a conclusion of law stating the Board acted without sufficient information to make its decision. We find no error. The standard of review for the Board's decision is whether the decision was "clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order . . ." RCW 34.04.130(6)(e); *Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 725, 696 P.2d 1222 (1985). We have reviewed the record and find the action of the Board to be within its statutory authority, supported by the evidence and consistent with the policy of the shoreline management act. Furthermore, no assignment of error is made to any of the findings of fact made by the Board.

Second, Kitsap County and Willing contend the requirement of studies in the Board opinion with results to be given to Kitsap County and the Department of Ecology, but with no provision for Board review, is an improper delegation of Board functions and an abdication of an obligation to consider the results of the studies itself. We disagree. The required studies were not to develop information on which the Board might make its decision or the County modify its permit. The environmental impacts of the proposed harvesting were thoroughly considered; the Board had all of the information it needed to make its decision. Rather, the purpose of the studies was to provide information which could serve as the basis for *future* decisions by Kitsap County or the Department of Ecology. The

studies would not be used for the permit in question.

Finally, the parties expend a good deal of energy in their briefs as to whether all or part of intervenor Willing's reply brief should be stricken. Because of our disposition of this case, we need not address this matter.

The trial court is reversed and the decision of the Shorelines Hearings Board is reinstated.

PEARSON, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.