[No. 63901-3-I.   Division One.   November 9, 2009.]

ELOISE KAILIN ET AL., *Respondents*, v. CLALLAM COUNTY ET AL., *Appellants*.

*Douglas E. Jensen*; and *Robert M. McKenna, Attorney General*, and *Laura Watson, Assistant*, for appellants.

*Craig A. Ritchie* (of *Ritchie Law Firm, PS*), for respondents.

¶1  Cox, J. — The sole issue in this case is whether the shorelines hearings board has subject matter jurisdiction to review conditions to a substantial development permit where those conditions arise from Clallam County's critical areas ordinance. Because the critical areas ordinance is not a part of the County's shoreline master program, the shorelines hearings board lacks jurisdiction to consider issues regarding that ordinance. We reverse the superior court and reinstate the decision of the shorelines hearings board.

¶2  In 2004, the County reviewed the first application to construct a residence submitted by Dr. Eloise Kailin and the Harvey Kailin Trust, whose trustee is Dr. Kailin (collectively Dr. Kailin). That proposal included a request for an exception to the County's critical areas ordinance. The County denied the requested exception. An appeal to the superior court followed. Review is still pending, as is a previous appeal to the shorelines hearings board based on the first proposal. The parties agreed that a new proposal would be submitted in support of a request for approvals. This second proposal is the subject of this appeal.

¶3 The unchallenged findings of the shorelines hearings board state the relevant factual and procedural background for this appeal. Dr. Kailin proposes to build a single family residence within 200 feet of the shoreline of Sequim Bay, Clallam County. The proposed building site lies within the "Clallam County Shoreline Master Program Rural Shoreline Environment." The residence is to include two bedrooms and bathrooms on one floor, with two more bedrooms and bathrooms and a large area of additional living space on the second floor.

¶4 The County approved the shoreline substantial development permit, subject to approval of the reasonable use exception required for wetland buffers under the County's critical areas ordinance.[1] The property contains a class III regulated wetland and a class I aquatic habitat conservation area (Sequim Bay). Dr. Kailin's environmental checklist acknowledges the existence of a wetland on the property, describing it as a "4050 square foot Class III palustrine emergent wetland."[2] The proposed residence would be 40.5 feet within the County's 50-foot protective wetland buffer under its critical areas ordinance.

¶5 Although the buffer requirement is contained in the County's critical areas ordinance, it is not contained in the County's shoreline master program.[3] The County's imposition of the condition arises from its ordinance that states, "All developments proposed on the shorelines of the County shall be consistent with the Chapter 27.12 CCC [Clallam County Code], Interim Critical Areas Code, as it applies, as amended."[4] The residence cannot be built without a reasonable use exception from the buffer requirement and a zoning variance for a reduction in the road setback. The

---

[1] Administrative Record at 164-65 (Findings, Conclusions & Decision of Hearing Examiner), 147-48 (Resolution No. 66,2007 of the Board of Clallam County Commissioners adopting hearing examiner's decision, etc.).

[2] Administrative Record at Petitioner's Exhibit 2.

[3] *Compare* Clallam County Code (CCC) ch. 27.12 *with* CCC ch. 35.01 *and* Clallam Count Shoreline Master Program.

[4] CCC 35.01.040(3)(b); Administrative Record at 133.

County approved the reasonable use exception and variance, subject to a number of conditions, including a reduction in the size of the proposed footprint of the residence.

¶6 Dr. Kailin then petitioned the shorelines hearings board for review of the County's decision. Dr. Kailin raised several issues on appeal, including the County's failure to grant a critical areas ordinance reasonable use exception to her application, as presented. The board upheld the substantial development permit, as written. As to the reasonable use exception, the board concluded that it lacked subject matter jurisdiction "to address, grant, or deny a reasonable use exception for intrusion into a wetland buffer requirement" of the County's critical areas ordinance.[5]

¶7 Dr. Kailin petitioned for review of the shorelines hearings board decision by the Clallam County Superior Court. Citing *Futurewise v. Western Washington Growth Management Hearings Board*,[6] the superior court concluded that the board's decision was in error. The superior court remanded the case to the board for further hearings.

¶8 The County and the Department of Ecology appeal. Dr. Kailin did not cross-appeal.

## SUBJECT MATTER JURISDICTION OF SHORELINES BOARD

¶9 The Department and the County argue that the shorelines hearings board properly decided that it lacked subject matter jurisdiction to review conditions based on the County's critical areas ordinance because the ordinance is not incorporated into the County's shoreline master program.[7] We agree.

¶10 Judicial review of a final administrative decision, including those by the shorelines hearings board, is

---

[5] Clerk's Papers at 76.

[6] 164 Wn.2d 242, 189 P.3d 161 (2008).

[7] Opening Brief of Appellant Washington State Department of Ecology at 20.

governed by the Administrative Procedure Act (APA), chapter 34.05 RCW.[8] In reviewing the decision, courts apply the standards of the APA directly to the administrative record before the agency.[9] Relief from an agency decision may be granted when the agency has erroneously interpreted or applied the law.[10] "[A]dministrative agencies are creatures of the Legislature, without inherent or common-law powers and, as such, may exercise only those powers conferred by statute, either expressly or by necessary implication."[11] The application of law to the facts is a question of law that we review de novo.[12]

¶11 The shorelines hearings board is a quasi-judicial agency created by RCW 90.58.170. The board's authority is statutorily limited by the following key provisions:

(1) "The shorelines hearings board may adopt rules and regulations governing the administrative practice and procedure in and before the board."[13]

(2) "Any person aggrieved by the granting, denying, or rescinding of a permit on shorelines of the state pursuant to RCW 90.58.140 may . . . seek review from the shorelines hearings board . . . ."[14]

(3) "Any person may appeal any rules, regulations, or guidelines adopted or approved by the department within thirty days of the date of the adoption or approval. The board shall make a final decision . . . ."[15]

(4) "The department's decision to approve, reject, or modify a proposed master program or master program amendment by a local government not planning under RCW 36.70A.040

---

[8] RCW 34.05.030(5); RCW 90.58.180(3).

[9] *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[10] RCW 34.05.570(3)(d).

[11] *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 558, 958 P.2d 962 (1998).

[12] *Tapper*, 122 Wn.2d at 403.

[13] RCW 90.58.175.

[14] RCW 90.58.180(1).

[15] RCW 90.58.180(4).

[Growth Management Act (GMA), chapter 36.70A RCW,] shall be appealed to the shorelines hearings board . . . ."[16]

¶12 Here, the issue before this court is a narrow legal issue: whether the shorelines hearings board has subject matter jurisdiction to address a reasonable use exception from the County's critical areas ordinance where that ordinance is not a part of the County's shoreline master program. For the following reasons we conclude that the board does not have such subject matter jurisdiction.

¶13 Historically, both the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, and the GMA, chapter 36.70A RCW, could bear on a proposed development on or near a "critical area" located within a shoreline area. In 2003, the legislature amended the SMA and GMA by enacting "AN ACT Relating to the integration of shoreline management policies with the growth management act; amending RCW 90.58.030, 90.58.090, 90.58.190, and 36.70A.480 . . . ."[17] The supreme court has referred to this act as Engrossed Substitute House Bill (ESHB) 1933.[18] That court also recently discussed the history of the interaction between the two acts and the 2003 amendments.[19]

¶14 Dr. Kailin does not argue that prior to the 2003 enactment of ESHB 1933 the shorelines hearings board had subject matter jurisdiction to review a reasonable use exception under the County's critical areas ordinance. A plain reading of the above numbered jurisdictional provisions (1), (3), and (4) shows that none of them apply to this case. Thus, none of those provisions would support such an argument.

---

[16] RCW 90.58.190(3).

[17] Laws of 2003, ch. 321.

[18] *Futurewise*, 164 Wn.2d at 244; Engrossed Substitute H.B. 1933, 58th Leg., Reg. Sess. (Wash. 2003).

[19] *Futurewise*, 164 Wn.2d at 243-44.

¶15 Because this is a case involving a shoreline substantial development permit, we examine former RCW 90.58-.180(1) (1997), which the above provision number (2) succeeded in 2003. Former RCW 90.58.180(1) provided, in relevant part,

> Any person aggrieved by the granting, denying, or rescinding of a *permit on shorelines of the state pursuant to RCW 90.58.140* may seek review from the shorelines hearings board by filing a petition . . . .[20]

RCW 90.58.140 provides, in relevant part,

> (1) *A development shall not be undertaken* on the shorelines of the state *unless it is consistent with the policy of this chapter and, after adoption or approval*, as appropriate, *the applicable* guidelines, rules, or *master program.*
>
> (2) A substantial development shall not be undertaken on shorelines of the state without first obtaining a permit from the government entity having administrative jurisdiction under this chapter.
>
> A permit shall be granted:
>
> . . . .
>
> (b) After adoption or approval, as appropriate, by the department of an applicable master program, *only when the development proposed is consistent with the applicable master program* and this chapter.[21]

¶16 Reading these statutes together, we conclude that they granted the shorelines hearings board subject matter jurisdiction to consider appeals of aggrieved persons involving shoreline permits where consistency with the SMA and/or an applicable shoreline master program was at issue. The scope of subject matter jurisdiction did not exceed these express limits because no other standards regarding substantial development permits are mentioned in the statute.

---

20 (Emphasis added.)

21 (Emphasis added.)

¶17 Here, the County approved Dr. Kailin's substantial development permit, subject to compliance with the County's critical areas ordinance.[22] That ordinance is not part of the County's shoreline master program.[23] There is no indication from this record that the ordinance has ever been part of the County's shoreline master program. Accordingly, prior to the 2003 enactment of ESHB 1933, there was no jurisdictional grant under former RCW 90.58.180(1) and 90.58.140 for the shorelines hearings board to consider a reasonable use exception from the County's critical areas ordinance that was not a part of the County's shoreline master program.

¶18 The next question is whether the 2003 enactment of ESHB 1933 had any effect on the jurisdictional limits of former RCW 90.58.180(1) and RCW 90.58.140. We conclude that it did not.

¶19 As we previously observed in this opinion, the legislature amended the SMA and GMA in 2003 by enacting "AN ACT Relating to the integration of shoreline management policies with the growth management act; *amending RCW 90.58.030, 90.58.090, 90.58.190, and 36.70A.480* . . . ."[24] A review of this listing of statutes amended by the 2003 law and the text of the amendments in the session laws shows that neither former RCW 90.58.180(1) nor RCW 90.58.140 was affected by ESHB 1933. Thus, ESHB 1933 did not modify the scope of subject matter jurisdiction of the shorelines hearings board.

¶20 More importantly, the only amendment the legislature has made to former RCW 90.58.180(1) in recent years was a 2003 amendment adding the below emphasized exception:

> Any person aggrieved by the granting, denying, or rescinding of a permit on shorelines of the state pursuant to RCW 90.58.140

---

[22] Administrative Record at 133-34.

[23] *See* Clallam County Shoreline Master Program.

[24] LAWS OF 2003, ch. 321 (emphasis added).

may, *except as otherwise provided in chapter 43.[21L] RCW (sections 1 through 15 of this act)*, seek review from the shorelines hearings board . . . .[25]

Had the legislature intended to expand the scope of subject matter jurisdiction of former RCW 90.58.180(1) by this 2003 amendment, it could have done so. It did not.

¶21 We conclude that there was no subject matter jurisdiction for the shorelines hearings board to consider matters not within a shoreline master program before the 2003 enactment of ESHB 1933. Moreover, that amendment did not change the jurisdiction of the board. The 2003 amendment of former RCW 90.58.180(1), which we have quoted above, *did nothing to expand the subject matter jurisdiction* of the board.

¶22 We note that the superior court reviewing the shorelines hearings board decision in this case did not rely on any of the jurisdictional statutory provisions that we have discussed in reaching its decision. Rather, the court primarily relied on the plurality opinion in *Futurewise*, which states the opinion of four justices on the meaning of enacted ESHB 1933.

¶23 As we just concluded in this opinion, RCW 90.58-.180(1) clearly expresses a legislative intent that subject matter jurisdiction in the shorelines hearings board does not extend to consideration of critical areas matters that are not within a shorelines master program. The related question, the one on which the parties here differ, is the effect, if any, of the *Futurewise* decision on the subject matter jurisdiction of the shorelines hearings board.

¶24 In *Futurewise*, the city of Anacortes had long had a shoreline master program for its shoreline area.[26] The Department approved the last amendments to that program in 2000.[27] Anacortes adopted new standards under its

---

[25] Laws of 2003, ch. 393, § 22 (emphasis added).

[26] *Futurewise*, 164 Wn.2d at 245.

[27] *Id.*

GMA plan for other areas, including critical areas.[28] In litigation before the Western Washington Growth Management Hearings Board, the board decided that the SMA, not the GMA, governed certain of these new standards. But on appeal of the board's decision to the superior court, that court disagreed. It held that the GMA applied to the new standards until the Department next considered and approved of them as amendments to the city's shoreline master program.[29] The supreme court granted discretionary review.

¶25 The analysis of the lead opinion primarily centered on consideration of two provisions of ESHB 1933. The first provision states as follows:

> The legislature intends that . . . critical areas within the jurisdiction of the [SMA] shall be governed by the [SMA] and that critical areas outside the jurisdiction of the [SMA] shall be governed by the [GMA].[30]

The other provision states as follows:

> As of the date the department of ecology approves a local government's shoreline master program adopted under applicable shoreline guidelines, the protection of critical areas as defined by RCW 36.70A.030(5) within shorelines of the state shall be accomplished only through the local government's shoreline master program and shall not be subject to the procedural and substantive requirements of this chapter [the GMA], except as provided in subsection (6) of this section.[31]

The lead opinion, signed by only four justices, concluded that "[c]ritical areas within the jurisdiction of the SMA are governed only by the SMA."[32] In doing so they relied heavily on the text of the first of the two above provisions. Those four justices ruled, "The decision of the trial court is

---

[28] *Id.*

[29] *Id.*

[30] ESHB 1933, at 2.

[31] RCW 36.70A.480(3)(a); ESHB 1933, at 13.

[32] *Futurewise*, 164 Wn.2d at 245.

reversed, and the decision of the Western Washington Growth Management Hearings Board upholding Anacortes is reinstated."[33]

¶26 A fifth justice, Justice Madsen, concurred "in the result only."[34] There is no opinion accompanying the concurrence to explain the rationale supporting it.

¶27 Four justices dissented, concluding, "[I]t is clear our legislature intended to transfer management of critical areas in shorelines from the GMA to the SMA in an orderly, measured process and upon the approval of shoreline master plans that specifically protect critical areas."[35] Those justices focused on the second of the two above provisions.

¶28 It is clear from review of the lead and dissenting opinions that there is no majority rationale. The lead opinion is signed by only four of the nine justices on the court. Justice Madsen, who concurred in the plurality opinion in "result only," did not supply any rationale for her decision to join the majority. Thus, the only conclusion that we can draw from these facts is that five justices agreed that "[t]he decision of the trial court is reversed, and the decision of the Western Washington Growth Management Hearings Board upholding Anacortes is reinstated."[36]

¶29 "A plurality opinion has limited precedential value and is not binding on the courts."[37] This court has observed that it is not possible to assess the correct holding of an opinion signed by four justices "with the fifth vote, concurring in the result only, being unaccompanied by an opinion."[38] " '[W]here there is no majority agreement as to the *rationale* for a decision, the holding of the court is the

---

[33] *Id.* at 248.

[34] *Id.*

[35] *Id.* at 248-49 (Chambers, J., dissenting).

[36] *Id.* at 248.

[37] *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004).

[38] *Wolfe v. Legg*, 60 Wn. App. 245, 249 n.1, 803 P.2d 804 (1991).

position taken by those concurring on the narrowest grounds.' "[39]

¶30 The Department urges us to adopt the growth management board's decision and apply it to this case. This is based on the fact that five justices of the supreme court agreed to reinstate the decision of the growth management board. But the rationale of the growth management board's decision is, to some extent, inconsistent with the analyses of both the lead opinion and the dissent in *Futurewise*.[40] Because the supreme court denied the Department's motion for reconsideration to clarify its decision, we are left to speculate on the precedential value, if any, of that decision. We decline to speculate and choose not to decide what parts of the growth management board's decision might be applied here.

¶31 At oral argument before this court, Dr. Kailin cited *Koenig v. Pierce County*[41] as supporting the precedential value of a plurality decision. But the plurality decision that this court followed in *Koenig* has been cited with approval in a subsequent supreme court decision.[42] In contrast, *Futurewise* has had no such reinforcement by the supreme court. Thus, Dr. Kailin's reliance on *Koenig* is misplaced.

¶32 Moreover, *Futurewise* is distinguishable from Dr. Kailin's case. There, Anacortes adopted new critical areas standards under its GMA plan after the legislature enacted ESHB 1933.[43] Futurewise and others challenged the newly-

---

[39] *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 593, 973 P.2d 1011 (1999) (emphasis added) (quoting *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998)).

[40] *See* Clerk's Papers at 116-27 (growth board decision concluding that a critical areas ordinance adopted by Anacortes post-ESHB 1933 constituted a de facto amendment to its shoreline master program and that the regulations would become effective *after* they were presented to and approved by the Department).

[41] 151 Wn. App. 221, 211 P.3d 423 (2009).

[42] *Koenig*, 151 Wn. App. at 231-32.

[43] *Futurewise*, 164 Wn.2d at 245.

adopted ordinance.[44] Here, there is no evidence to show that the County has updated its critical areas ordinance since the enactment of ESHB 1933. Nor has Dr. Kailin challenged the ordinance directly. Instead, she appeals the application of the ordinance to her proposed development. She fails to explain why this individual permitting decision should be treated the same as an amendment to the County's shoreline master program. We see no basis for drawing parallels between the two.

¶33 Another distinction is that the issue of the shorelines hearings board's subject matter jurisdiction was not before the court in *Futurewise*. Nor was the court called upon to consider a challenge to a site-specific permitting decision that does not implicate the County's shoreline master program as in this case.

¶34 For these reasons, reliance on the lead opinion in *Futurewise* to provide assistance on the jurisdictional question now before us is singularly unhelpful. The trial court erred in doing so.

¶35 We note that as of this writing, two identically worded bills were introduced in the legislature, apparently in reaction to the supreme court's decision in *Futurewise*. House Bill 1653 was submitted to the House.[45] Senate Bill 5726 was submitted to the Senate.[46] The full legislature has not yet acted on these bills, and we draw no conclusions from the lack of legislative action.

¶36 Dr. Kailin cites several cases for the proposition that her proposed development is entirely within the jurisdiction of the SMA and therefore subject to review by the shorelines hearings board. None of the cases she cites are persuasive.

¶37 In *Kitsap Alliance of Property Owners v. Central Puget Sound Growth Management Hearings Board*

---

[44] *Id.*

[45] H.B. 1653, 61st Leg., Reg. Sess. (Wash. 2009).

[46] S.B. 5726, 61st Leg., Reg. Sess. (Wash. 2009).

(*KAPO*),[47] the parties presented Division Two with the same issue as in *Futurewise*.[48] In our view, *KAPO* is controlled by *Futurewise*. For the reasons we have already explained, *Futurewise* does not require a different result here. Neither does *KAPO*.

¶38 In *Harrington v. Spokane County*,[49] Division Three of this court held that the statutory scheme requires permit decisions within the jurisdiction of the shorelines board to be reviewed by that board under the SMA, as decisions reviewable by the shorelines board are not subject to judicial review under the Land Use Petition Act (LUPA), chapter 36.70C RCW.[50] *Harrington* does not address the issue of the shorelines board's jurisdiction to review a critical areas permit decision or any other land use regulations.

¶39 In *Twin Bridge Marine Park, LLC v. Department of Ecology*,[51] the supreme court held that the Department needed to appeal a building permit under LUPA rather than pursue an enforcement action under the SMA for construction that occurred in compliance with a valid building permit.[52] The court relied on its earlier decision in *Samuel's Furniture, Inc. v. Department of Ecology*,[53] which held that the Department is required to file a LUPA petition to challenge a local government's land use decision when the local government has determined that the project is not within shoreline jurisdiction.[54] Both cases support the Department's position that the shorelines board does not

---

[47] 152 Wn. App. 190, 217 P.3d 365 (2009).

[48] *Id.* at 191.

[49] 128 Wn. App. 202, 114 P.3d 1233 (2005).

[50] *Id.* at 213-15.

[51] 162 Wn.2d 825, 175 P.3d 1050 (2008).

[52] *Id.* at 843-47.

[53] 147 Wn.2d 440, 54 P.3d 1194 (2002).

[54] *Id.* at 444.

have jurisdiction over all matters that impact land within shoreline jurisdiction.[55]

¶40 The *English Bay Enterprises, Ltd. v. Island County*[56] decision addressed the issue of whether clam harvesting that involves dredging constitutes "substantial development" as defined by the SMA.[57] The court concluded that the activity did fall within the statutory definition of "substantial development," thereby giving the shorelines board jurisdiction over the clam harvester's appeal of a county's substantial development permit decision.[58] *English Bay* does not address the board's jurisdiction over any other matters regarding shorelines, nor does it reach the issue of whether the SMA applies to the exclusion of all other regulations on shorelines. It is not helpful.

¶41 In sum, none of the cases Dr. Kailin cites address the subject matter jurisdiction issue presented in this case. The controlling statutes support the conclusion that the shorelines hearings board does not have jurisdiction to review issues arising from critical areas ordinances that are not incorporated into shoreline master programs. The board correctly decided it had no subject matter jurisdiction in this case to address the matters it chose not to review.

## OTHER MATTERS

¶42 Dr. Kailin's remaining arguments fall outside the scope of the appeals of the Department and the County. They also seek affirmative relief. For these reasons, we decline to address these arguments.

¶43 Dr. Kailin argues that the Department did not properly designate a wetland on her property. She asks this

---

[55] *See id.* at 460 ("LUPA does not amend the SMA, but instead fills a void left by the SMA. . . . [B]ecause the SMA does not provide for review of the type of question presented here, LUPA provides the avenue for appealing this decision.").

[56] 89 Wn.2d 16, 568 P.2d 783 (1977).

[57] *Id.* at 19-20.

[58] *Id.* at 17-21.

court to affirm the trial court and "also rule that no remand is needed to the Shoreline[s] Hearings Board because the critical areas ordinance of the County is inapplicable in Shorelines jurisdictions and that Ecology has designated no wetlands on the Kailin property which could be regulated by a critical areas ordinance."[59]

¶44 "A notice of cross review is essential if the respondent 'seeks affirmative relief as distinguished from the urging of additional grounds for affirmance.' "[60] Here, Dr. Kailin seeks affirmative relief, but did not cross-appeal. We therefore decline to address these issues.

¶45 We reverse the superior court's decision and reinstate the decision of the shorelines hearings board.

DWYER, A.C.J., and GROSSE, J., concur.

---

[59] Respondents' Brief at 29-30.

[60] *Robinson v. Khan*, 89 Wn. App. 418, 420, 948 P.2d 1347 (1998) (quoting *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 700 n.3, 915 P.2d 1146 (1996) and citing RAP 2.4(a)).