189 P.3d 161 (2008)
FUTUREWISE, Evergreen Islands, and Skagit Audubon Society, Respondents,
Washington State Department of Community, Trade and Economic Development and Washington State Department of Ecology, Respondents/Intervenors,
v.
WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, an agency of the state of Washington; and City of Anacortes, Petitioners, and
Washington Public Ports Association, Intervenor.
No. 80396-0.
Supreme Court of Washington, En Banc.
Argued November 29, 2007.
Decided July 31, 2008.
Ian Stuart Munce, City Attorney Anacortes, WA, P. Stephen Dijulio, Susan Elizabeth Drummond, Foster Pepper PLLC Seattle, WA for Appellant(s).
Melissa O'Loughlin White, Matthew D. Taylor, Cozen O'Connor, Keith Patrick Scully, Gendler & Mann LLP, Seattle, WA for Respondent(s).
Eric Samuel Laschever, Steven J. Thiele, Stoel Rives LLP, Seattle, WA for Appellant Intervenor(s).
Alan D. Copsey, Office of the Atty General, Thomas J. Young, Attorney General's Office, Ecology Division, Olympia, WA, for Respondent Intervenor(s).
*162 Diana M. Kirchheim, Washington State Senate, Olympia, WA, Brian Trevor Hodges, Pacific Legal Foundation, Bellevue, WA, Amicus Curiae on behalf of Kitsap Alliance of Property Owners and Amicus Curiae on behalf of Pacific Legal Foundation.
J.M. JOHNSON, J.
¶ 1 In 1971, Washington voters passed the Shoreline Management Act of 1971(SMA), chapter 90.58 RCW. The SMA meant to strike a balance among private ownership, public access, and public protection of the State's shorelines. RCW 90.58.020. Starting that year, local governments were required to create shoreline master plans governing the use of shorelines and the Department of Ecology (Ecology) was given authority to approve plans before they became effective. RCW 90.58.070(1). The plans must be updated every seven years to make sure they still comply with the law. RCW 90.58.080(4). The city of Anacortes has a shoreline master plan, which Ecology approved in 1977. Ecology has approved Anacortes's periodic updates several times since then, most recently in 2000. Each time, both Anacortes and Ecology held public hearings and made written findings, concluding that the plans adequately protected shorelines in Anacortes.
¶ 2 In 1990, the legislature passed the Growth Management Act, chapter 36.70A RCW (GMA). Its goal is to coordinate land use planning across the state. RCW 36.70A.010. The GMA has substantial requirements when actions might affect areas defined as "critical areas." RCW 36.70A.172(1). Among other things, the GMA was amended in 1995 to require local governments to designate and protect critical areas using the "best available science"  a benign term with often a heavy price tag. Id. The SMA, with its goal of balancing use and protection, is less burdensome.
¶ 3 The GMA also divided the state into thirds and created three administrative boards to hear appeals under the GMA. RCW 36.70A.250. In 2003, the Central Puget Sound Growth Management Hearings Board decided that the GMA retroactively applied even to those critical areas inside shoreline management areas long managed through shoreline master plans properly adopted, amended, and approved by Ecology under the SMA. Everett Shorelines Coal. v. City of Everett, No. 02-3-0009c (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Jan. 9, 2003). This board decision so conflicted with the law and the established practices that the legislature acted the next session by enacting a law explicitly rejecting that board's interpretation. ENGROSSED SUBSTITUTE H.B. 1933, 58th Leg., Reg. Sess. § 1(1) (Wash. 2003) (ESHB 1933). "The legislature intends that critical areas within the jurisdiction of the [SMA] shall be governed by the [SMA] and that critical areas outside the jurisdiction of the [SMA] shall be governed by the [GMA]." Id. § 1(3). We hold that the legislature meant what it said. Critical areas within the jurisdiction of the SMA are governed only by the SMA.

I
¶ 4 The city of Anacortes has long had a shoreline master plan for its shoreline area (last amended and approved in 2000). Anacortes adopted new standards under its GMA plan for other areas, including critical areas. Unfortunately, it is now common that litigation often follows actions by local governments relating to land use. In this litigation, the Western Washington Growth Management Hearings Board decided that the SMA continued to cover Anacortes's plan (rather than the GMA amendments), following the clear language of ESHB 1933. When litigant Futurewise appealed, the superior court disagreed and held that the GMA retroactively applies to critical areas within the shoreline master plan until the next time Ecology considers and approves an amended shoreline master plan.[1] Anacortes appealed, and we granted direct review.

II
¶ 5 The only issue is whether the legislature meant the GMA to apply to critical areas in shorelines covered by shoreline master *163 plans until Ecology has approved a new or updated shoreline master plan. The legislature's clear intent as quoted above reads, "critical areas within the jurisdiction of the [SMA] shall be governed by the [SMA]." ESHB 1933 § 1(3).
¶ 6 Ecology principally relies on the language of ESHB 1933 as codified, which reads: "As of the date the department of ecology approves a local government's shoreline master program ... the protection of critical areas ... shall be accomplished only through the local government's shoreline master program...." RCW 36.70A.480(3)(a). The tense of "approves" sounds prospective, but only at first blush. This is the same verb tense as "[t]he legislature intends," and the legislature surely did not mean its statutory correction would solve the misreading of the statute someday in the future. The cure was immediate (indeed retrospective). In the same way, the legislature uses "[a]s of the date the department of ecology approves" to refer to the date of approval of each plan. In Anacortes's case, that date was in 2000.
¶ 7 The subsections of ESHB 1933 surrounding this language support this reading. As codified, the very next subsection reads: "Critical areas within shorelines of the state... and that are subject to a shoreline master program adopted under applicable shoreline guidelines shall not be subject to the procedural and substantive requirements of [the GMA]." RCW 36.70A.480(3)(b). The subsection after that reads: "[The GMA] shall not apply to the adoption or subsequent amendment of a local government's shoreline master program." RCW 36.70A.480(3)(c). None of this is prospective or delayed in effect. The legislature's intent was that the SMA, not the GMA, should cover shorelines.
¶ 8 ESHB 1933 was a rebuke to one board decision that misread the law. Courts must not repeat or extend one hearings board's mistake, especially when the legislature took only four months to adopt legislation clarifying that the board had construed the law incorrectly.
¶ 9 SMA coverage of shorelines has long protected the environment. Anacortes has had a shoreline master plan protecting its shorelines since 1977, which was adopted by Anacortes's city council and approved by Ecology. Hearings, extensive study and analysis, and public input surrounded each step. Among other things, before enacting the plan, Anacortes gave notice to every interested party and allowed opportunity for input and comment. RCW 90.58.090(2)(a). The plan and its updates take into account the preservation and protection of shorelines. RCW 90.58.020. Those closest to the Anacortes shorelines, i.e., the residents and their elected representatives, have the most invested in properly balancing smart use and environmental safeguards. Anacortes has followed the SMA and has created a master plan protecting its shorelines, and Ecology has approved the plan. The shorelines will remain protected.
¶ 10 The real-world effect of interpreting the transfer as prospective, as Ecology urges, would be to change the effective date of ESHB 1933 from July 27, 2003, to a much later rolling date, as Ecology gets around to processing and approving new or amended shoreline master plans. At oral argument, Ecology's attorney said Ecology had approved only 3 out of 39 county plans since 2003. And those are just the county plans; cities also have plans that Ecology must approve. At this rate, if we were to hold as petitioners and Ecology argue, it is unknown when the law would go into effect statewide. The legislature surely did not intend the effect of this curative law to delay, and such a conclusion flies in the face of express legislative intent.
¶ 11 Finally, Ecology's position would place local governments and landowners in an untenable position. Anacortes has long complied with the law and has a shoreline master plan in place. Landowners have relied on this plan when making long-term decisions about their property. Anacortes and its residents have also made long-term reliance. If we were to hold as Ecology urges, both Anacortes and the landowners would spend significant time and money complying with the GMA and the SMA, until Ecology ultimately approves a new shoreline master plan. This contradicts the finality and certainty that is so important in land use cases. See Samuel's Furniture, Inc. v. Dep't of *164 Ecology, 147 Wash.2d 440, 459, 54 P.3d 1194 (2002).
¶ 12 The trial court repeated the mistake of one errant hearings board when it held that the GMA controls procedures inside shorelines until new SMA plans are formulated and approved. The legislature clearly rejected that holding. Deciding as Ecology urges would contradict the clear language and intent of the legislature in ESHB 1933 and would add substantial costs to citizens and local governments. Ironically, legitimate conservation management efforts would be frustrated and encumbered. The decision of the trial court is reversed, and the decision of the Western Washington Growth Management Hearings Board upholding Anacortes is reinstated.[2]
WE CONCUR: CHARLES W. JOHNSON, RICHARD B. SANDERS, JJ., and BOBBE J. BRIDGE, J. Pro Tem.
BARBARA A. MADSEN, J., concurs in result only.
CHAMBERS, J. (dissenting).
¶ 13 The majority is unnecessarily critical of the Department of Ecology (Ecology) and the Growth Management Act (GMA), chapter 36.70A RCW. The majority's conclusion today is clearly driven by the belief that the Shoreline Management Act of 1971(SMA), chapter 90.58 RCW, is wiser and more attractive than the GMA. This belief leads the majority to its overly simplistic and erroneous conclusion that because the city of Anacortes had a shoreline master plan in place in 2003, it had met its legal obligations to protect the critical areas of its shorelines, even though it had not been required to meet the relevant legal standards when designing that plan. Admittedly, harmonizing the SMA and the GMA is a challenge, both for local governments and this court. However, I must dissent because our role when interpreting statutes, which is all we are called upon to do today, is to implement the intent of the legislature. It is not to evaluate the merits of the legislation. We best achieve the goals of the legislature by interpreting its plain words in context. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). When we read both acts together, it is clear our legislature intended to transfer management of critical areas in shorelines from the GMA to the SMA in an orderly, measured process and upon the approval of shoreline master plans that specifically protect critical areas.
¶ 14 The people of this state enacted the SMA in 1971, and 19 years later our legislature followed up with the GMA. LAWS of 1971, 1st Ex.Sess., ch. 286; LAWS of 1990, 1 st Ex.Sess., ch. 17. Under both acts, local governments manage the use of local land in compliance with state law and in cooperation with the State. RCW 36.70A.070, .106, .130,.250(GMA); RCW 90.58.050, .070, .080,.090(SMA). After much study, the legislature made its first attempt to coordinate the two acts five years after enacting the GMA. LAWS of 1995, ch. 347. In due course, a local government's attempt to plan under the coordinated acts was litigated and came before a growth management hearings board. See Everett Shorelines Coal. v. City of Everett, No. 02-3-0009c, at 3 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Jan. 9, 2003). The board concluded that shorelines of statewide significance under the SMA were also categorically critical areas under the GMA, and thus, shoreline management often had to comply with both acts. Id. at 17.
¶ 15 In response, the 2003 legislature amended both the SMA and the GMA. ENGROSSED SUBSTITUTE H.B.1933, 58th Leg., Reg. Sess. (Wash.2003) (hereinafter ESHB 1933). I completely agree with the majority that the overarching legislative purpose was expressed clearly:
The legislature intends that critical areas within the jurisdiction of the shoreline management act shall be governed by the shoreline management act and that critical areas outside the jurisdiction of the shoreline *165 management act shall be governed by the growth management act.
ESHB 1933, § 1(3). But the legislature did much more than merely declare that critical areas in shorelines were to be managed under the SMA as the majority suggests. It also raised the bar for that management, requiring local governments to consider the goals and policies of the SMA when planning under the GMA. ESHB 1933, § 5(1) (codified as RCW 36.70A.480(1)). It directed Ecology to approve only those shoreline master programs that provide at least as much protection to relevant critical areas as the local critical areas ordinances would have. ESHB 1933, § 3(4) (codified as RCW 90.58.090(4)). And, most importantly for us today, it tells us when that transfer should take place:

As of the date the department of ecology approves a local government's shoreline master program adopted under applicable shoreline guidelines, the protection of critical areas as defined by [the GMA] within shorelines of the state shall be accomplished only through the local government's shoreline master program and shall not be subject to the procedural and substantive requirements of this chapter.
RCW 36.70A.480(3)(a) (emphasis added). This language is prospective. Cf. In re Estate of Burns, 131 Wash.2d 104, 110, 928 P.2d 1094 (1997). As of the date Ecology approves a municipal shoreline master program adopted under shoreline guidelines that protect critical areas,[1] management of critical areas within shorelines shall be done under the SMA, not the GMA. If the legislature intended the transfer from the GMA to the SMA to occur immediately, it was fully capable of saying so. Instead, it made that transfer contingent on a future event; Ecology's approval of a revised shoreline master program approved wider applicable shoreline guidelines.
¶ 16 While I believe that the plain language permits no other interpretation, this interpretation also fits best within the larger statutory backdrop. Again, the 2003 legislature required, for the first time, that shoreline master programs protect critical areas as defined by the GMA. ESHB 1933, § 3(4) (codified as RCW 90.58.090(4)). ESHB 1933 also imposed two new substantive requirements on Ecology before Ecology could approve a shoreline master program. Now, Ecology can approve only shoreline master programs that (1) are consistent with RCW 90.58.020 and applicable shoreline guidelines and (2) provide protection that is "at least equal to that provided by the local government's critical areas ordinances." ESHB 1933, § 3(4) (codified as RCW 90.58.090(4)). These requirements were not in place when Anacortes's existing shoreline master program was approved. The legislature also expanded the reach of the SMA with ESHB 1933 to include "land necessary for buffers for critical areas, as defined in chapter 36.70A RCW, that occur within the shorelines of the state." ESHB 1933, § 2(2)(f)(ii) (codified as RCW 90.58.030(2)(f)(ii)). That is a significant expansion of the land under the jurisdiction of the SMA and strong reason to believe that the legislature intended the transfer to happen only after municipalities had the opportunity to revise their GMA and SMA plans with these statutory changes in mind.
¶ 17 Whether we look only at the timing provision of RCW 36.70A.480(3)(a) or at the larger statutory scheme, we should reach the same conclusion. The 2003 legislature intended to transfer protection of the relevant critical areas from the GMA to the SMA as municipalities enact, and Ecology approves, new shoreline master programs. Deciding otherwise does violence to the legislature's clearly expressed purpose that management of critical areas under the SMA take on some of the features of management under the GMA. Since the majority reaches a contrary conclusion, I respectfully dissent.
*166 WE CONCUR: Chief Justice GERRY L. ALEXANDER, SUSAN OWENS, and MARY E. FAIRHURST, JJ.
NOTES
[1] As is noted infra, Ecology has acted to approve only three (amended) county plans since 2003.
[2] After oral argument, Ecology filed a statement of supplemental authority. Anacortes filed a motion to strike the statement, claiming it improperly contains argument, RAP 10.8, and that it cites to legal authorities that are not new. We deny the motion, both because the statement does not contain argument and because nothing in the rule limits its application to newly created law.
[1] The legislature was well aware that there were no shoreline guidelines in place when it enacted ESHB 1933. See, e.g., ESHB 1933, § 1(1). This was because Ecology's initial attempt to draw these guidelines was struck down by the Shorelines Hearings Board and new regulations were not substantially in place until December 2003. See Assoc. of Wash. Bus. v. Dep't of Ecology, SHB No. 00-037, Order Granting and Den. Appeal (Shorelines Hearings Board Aug. 27, 2001), available at http://www.eho.wa.gov/search documents/2001 ärchive/shb00-037final.htm; see also ch. 173-26 WAC.