[Nos. 38017-0-II; 38087-1-II.   Division Two.   September 9, 2009.]

KITSAP ALLIANCE OF PROPERTY OWNERS ET AL., *Appellants*, v. THE CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD ET AL., *Respondents*.

*Robert M. McKenna, Attorney General*, and *Martha P. Lantz, Assistant*, for respondent Central Puget Sound Growth Management Hearings Board.

*Russell D. Hauge, Prosecuting Attorney*, and *Lisa J. Nickel, Deputy*, for respondent Kitsap County.

*Tim Trohimovich* (of *Futurewise*), for respondents Futurewise, Hood Canal Environmental Council, Kitsap Citizens for Reponsible Planning, Judith Krigsman, Jim Trainer, and West Sound Conservation Council.

*Robert A. Beattey*, for respondent Futerwise.

¶1 KORSMO, J. — This action presents an issue our Supreme Court has not yet authoritatively resolved concerning the interaction of the Growth Management Act and the Shoreline Management Act on "critical areas" within "shoreland" regions. While there is no majority of the court for a specific analytic approach to the issue, the outcome of *Futurewise v. Western Washington Growth Management Hearings Board*[1] dictates our resolution of this appeal. The decision to require a setback buffer for the entire marine shoreline of Kitsap County is reversed and the matter

---

[1] 164 Wn.2d 242, 189 P.3d 161 (2008).

remanded for consideration under the Shoreline Management Act.

## FACTS

¶2 The procedural and factual history of this case is extensive but can be expressed in simplified form in light of our decision. The action arose after Kitsap County (County) began to update its Critical Areas Ordinance (CAO) as required by the Growth Management Act (GMA), chapter 36.70A RCW. The initial ordinance set a 35-foot buffer around the county's marine shorelines. Kitsap Alliance of Property Owners (KAPO)—a nonprofit Washington corporation—and two property owners challenged the buffer as excessive before the Central Puget Sound Growth Management Hearings Board (Board). Several other parties, including respondent Hood Canal Environmental Council, another nonprofit Washington corporation, filed a competing challenge, alleging that the buffers were inadequate.

¶3 In 2006, the Board issued a decision rejecting the KAPO challenge and remanded the ordinance to the County with directions to increase the buffer zone. KAPO filed a petition for review with the Kitsap County Superior Court. Meanwhile, the County amended the CAO and increased the marine shoreline buffer to 50 feet in urban shoreline areas and 100 feet in rural and semirural shoreline areas.[2] The Board approved the amended CAO and KAPO filed another petition for review. The superior court consolidated the two matters. It upheld the Board's decisions. KAPO then appealed to this court.

## ANALYSIS

¶4 The Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, was enacted in 1971 to protect our shore-

---

[2] We were advised at oral argument that the expanded buffers were necessary to deal with federal concerns involving two declining fish species. *See infra* note 3. No party contends that federal law is involved in this action.

lines by requiring coordinated planning of development near them. RCW 90.58.020. To that end, the SMA permits development near shorelines when it is "carefully planned, managed, and coordinated in keeping with the public interest." *Dep't of Ecology v. Ballard Elks Lodge No. 827*, 84 Wn.2d 551, 557, 527 P.2d 1121 (1974). The "shorelines" include the "shoreland" within 200 feet of the ordinary high water mark. RCW 90.58.030(2)(e), (f). The Department of Ecology must approve a local shoreline management plan before it is effective. RCW 90.58.090(1).

¶5 The GMA, enacted in 1990, is a planning statute that requires counties and cities to coordinate land use plans and direct development to urban growth areas. RCW 36.70A.010, .020, .040. Among its many provisions is a requirement that cities and counties adopt and regularly update their comprehensive plans and their plans for critical areas. RCW 36.70A.130(1). A "critical area" is defined to include several different areas including wetlands and frequently flooded areas. RCW 36.70A.030(5).[3] A decision to designate and protect a critical area must be based on the best available science. RCW 36.70A.172(1).

¶6 Recognizing that the two acts overlapped with respect to the shoreland within 200 feet of a shoreline, the Legislature tried to provide guidance by initially stating in 1995 that the goals of the SMA would be goals of the GMA and that an approved shoreline master plan would be an element of a city's or county's comprehensive plan. The shoreline plan was to be developed in accordance with SMA procedures. Former RCW 36.70A.480 (1995). In a later attempt to clarify the interplay between the two statutes, the Legislature sought to further harmonize the competing approaches to land use near shorelines when it amended section 480 by the enactment of Laws of 2003, ch. 321, § 5. That statute provides in relevant part:

---

[3] In planning for critical areas, "counties and cities shall give special consideration to conservation or protection measures necessary to preserve or enhance anadromous fisheries." RCW 36.70A.172(1).

(3) The policies, goals, and provisions of chapter 90.58 RCW and applicable guidelines shall be the sole basis for determining compliance of a shoreline master program with this chapter except as the shoreline master program is required to comply with the internal consistency provisions of [other specified code sections].

(a) As of the date the department of ecology approves a local government's shoreline master program adopted under applicable shoreline guidelines, the protection of critical areas as defined by RCW 36.70A.030(5) within shorelines of the state shall be accomplished only through the local government's shoreline master program and shall not be subject to the procedural and substantive requirements of this chapter, except as provided in subsection (6) of this section.

(b) Critical areas within shorelines of the state that have been identified as meeting the definition of critical areas as defined by RCW 36.70A.030(5), and that are subject to a shoreline master program adopted under applicable shoreline guidelines shall not be subject to the procedural and substantive requirements of this chapter, except as provided in subsection (6) of this section. . . .

(c) The provisions of RCW 36.70A.172 shall not apply to the adoption or subsequent amendment of a local government's shoreline master program and shall not be used to determine compliance of a local government's shoreline master program with chapter 90.58 RCW . . . .

(4) Shoreline master programs shall provide a level of protection to critical areas located within shorelines of the state that is at least equal to the level of protection provided to critical areas by the local government's critical area ordinances . . . .

(5) Shorelines of the state shall not be considered critical areas under this chapter except to the extent that specific areas located within shorelines of the state qualify for critical area designation based on the definition of critical areas provided by RCW 36.70A.030(5) and have been designated as such . . . .

(6) If a local jurisdiction's master program does not include land necessary for buffers for critical areas that occur within shorelines of the state, as authorized by RCW 90.58.030(2)(f), then the local jurisdiction shall continue to regulate those

critical areas and their required buffers pursuant to RCW 36.70A.060(2).

RCW 36.70A.480.[4]

¶7 The amended statute arguably left the two acts more intertwined than before. While the SMA is designated to govern critical areas within the shoreland regions and was not required to comply with the "best available science" standard of the GMA, it was still required to provide at least the same level of protection as the local CAO did. Further, if the SMA did not have a large enough buffer area, then the GMA would govern by applying the buffer the CAO required. In doing so, the legislation created a classic "chicken and the egg" problem by not answering the question of which statute comes first. The SMA must govern, but it has to do so with reference to GMA standards and requirements. The reliance on GMA standards presupposes that a CAO is in place for the shoreland that the SMA is supposed to regulate.

¶8 The interpretation of these provisions has been at issue in two cases, *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 169 P.3d 14 (2007), and *Futurewise*, 164 Wn.2d 242. Neither of these cases garnered a majority in favor of its interpretation.

¶9 *Biggers* involved an attempt by the city of Bainbridge Island (City) to prevent shoreline development while it updated its shoreline master program. To do so, it serially imposed three moratoria while it developed its updated shoreline plan. The City relied on a GMA provision, RCW 36.70A.390, as its authority to issue each development moratorium. 162 Wn.2d at 688-690. The plurality opinion, written by Justice James Johnson, found that the City lacked authority to impose a moratorium on development.[5]

---

[4] The 2003 amendments also placed similar language in parallel provisions of the SMA.

[5] The opinion was joined by Chief Justice Alexander and Justices Sanders and Bridge.

As relevant here, the plurality cited to RCW 36.70A.480(2) and (3) and stated "the provisions of the SMA remain the source of adoption procedures for shoreline development." 162 Wn.2d at 700. The deciding vote in the case was cast by Justice Chambers. He stated that he largely agreed with the dissent's analysis and expressly disagreed with the plurality's view that the City lacked authority to impose the moratoria. *Id.* at 703, 706 (Chambers, J., concurring in result). Instead, he found the repeated and continuous moratoria an unreasonable use of the police power. *Id.* at 706 (Chambers, J., concurring in result). Justice Fairhurst authored the dissent.[6] That opinion discussed the moratorium power under the SMA and the state constitution but did not address the GMA. *Id.* at 707-714 (Fairhurst, J., dissenting).

¶10 The *Futurewise* case directly addressed the problem of the interaction of the SMA and GMA on shoreland areas. There the city of Anacortes had prepared an update to its SMA master plan that included regulation of the shoreland region. The plan was litigated before the Western Washington Growth Management Hearings Board, which approved the plan. Futurewise then appealed the board's decision to the Thurston County Superior Court. 164 Wn.2d at 244-245. The court reversed, finding that the GMA applied and governed critical areas until such time as the Ecology department approved a new master plan for Anacortes. *Id.* at 245.

¶11 On direct review, the Washington Supreme Court reversed the superior court and reinstated the Growth Management Hearings Board's decision. *Id.* at 245, 248. The court again did so by a plurality opinion written by Justice James Johnson.[7] The opinion noted legislative history[8] stating that the 2003 amendment was designed to overturn an

---

[6] The opinion was joined by Justices Charles Johnson, Madsen, and Owens.

[7] The opinion was joined by Justices Charles Johnson, Sanders, and Bridge.

[8] The intent section of the bill indicated the Legislature's desire to overturn the decision in *Everett Shorelines Coalition v. City of Everett*, No. 02-3-0009c. LAWS OF 2003, ch. 321, § 1(1). The intent section also stated, "The legislature intends that critical areas within the jurisdiction of the shoreline management act shall be governed by the shoreline management act and that critical areas outside the

earlier decision of the Central Puget Sound Growth Management Hearings Board that had "retroactively applied" the GMA to critical areas within the scope of the SMA master plans. *Id.* at 244-245. The plurality opinion also rejected the argument that RCW 36.70A.480(3)(a)[9] provided that the SMA would govern only after the Department of Ecology had approved a shoreline plan. *Id.* at 245-247.

¶12 The fifth vote to resolve the case was supplied by Justice Madsen, who only concurred in the plurality's result. The dissent was written by Justice Chambers.[10] The dissent agreed that the Legislature had clearly stated its intent that the SMA ultimately govern the shoreland areas but argued that the transfer of that authority from the GMA to the SMA was contingent on updated master plans approved by the Department of Ecology. *Id.* at 249-251.

¶13 This case presents the same issue as *Futurewise*. The Legislature has not acted to further clarify the interplay between the two statutes. Our Supreme Court has not been able to garner a majority view for resolving the problem. When dealing with a plurality opinion, the holding of the court is the position of the justice(s) concurring on the narrowest grounds. *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998); *State v. Zakel*, 61 Wn. App. 805, 808, 812 P.2d 512 (1991), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992). In *Futurewise*, the narrowest position was that of Justice Madsen, who concurred only in the result. The result, in turn, was reinstatement of the decision of the Western Washington Growth Management Hearings Board upholding the actions of the city of Anacortes in regulating

---

jurisdiction of the shoreline management act shall be governed by the growth management act." LAWS OF 2003, ch. 321, § 1(3).

[9] RCW 36.70A.480(3)(a): *"As of the date the department of ecology approves a local government's shoreline master program* adopted under applicable shoreline guidelines, *the protection of critical areas as defined by RCW 36.70A.030(5) within shorelines of the state shall be accomplished only through the local government's shoreline master program."* (Emphasis added.)

[10] The opinion was joined by Chief Justice Alexander and Justices Owens and Fairhurst.

shoreland areas under its SMA master plan. The result also overturned a superior court decision requiring regulation under the GMA.

¶14 While the language of RCW 36.70A.480 certainly contemplates that plans under both the SMA and the GMA will regulate critical areas in shoreland regions in some situations and, thus, suggests that both types of plans can exist at the same time, the outcome of *Futurewise* seems to dictate otherwise. By overturning the order calling for GMA planning while upholding the SMA planning, *Futurewise* directs that only one plan—the SMA plan—can be in effect at one time. Accordingly, the Kitsap County CAO at issue here is reversed and the matter remanded to the Board for further remand to the County to plan for the shoreland regions under the SMA.

¶15 We appreciate that this result leaves cities and counties attempting to comply with RCW 36.70A.480 in a difficult position. Although the statute suggests that the respective CAO plans under the GMA must include any critical areas that also fall within the jurisdiction of the SMA, the decision in *Futurewise* directs that local governments act only under the SMA. The problem may be alleviated somewhat if our Supreme Court can muster a clear majority on the topic. Ultimately, however, the Legislature must clarify how, if at all, the GMA provisions in RCW 36.70A.480(4) and (6) apply to critical areas that also happen to fall within SMA shoreland jurisdiction.[11]

¶16 Reversed and remanded to the Central Puget Sound Growth Management Hearings Board for further action.

VAN DEREN, C.J., and PENOYAR, J., concur.

Petition for review granted and case remanded to the Court of Appeals at 168 Wn.2d 1031 (2010).

---

[11] In light of this disposition, we do not address KAPO's other contentions.