238 P.3d 539 (2010)
Louise LAUER and Darrell de Tienne, Respondents,
v.
PIERCE COUNTY; Mike and Shima Garrison and Betty Garrison, Appellants.
No. 38321-7-II.
Court of Appeals of Washington, Division 2.
September 8, 2010.
*541 Gregory Austin Jacoby, Jennifer Anne Irvine Forbes, McGavick Graves PS, Tacoma, WA, for Appellants.
Margaret Yvonne Archer, Attorney at Law, Christine D. Sanders, Gordon Thomas Honeywell LLP, Jill Guernsey, Pierce County Prosecutor's Office, Tacoma, WA, for Respondents.
VAN DEREN, J.
¶ 1 A Pierce County hearing examiner granted Mike and Shima Garrison's application for a fish and wildlife variance, enabling them to proceed with construction of their house within a stream buffer zone on their property. Neighbors, Louise Lauer and Darrell de Tienne (Lauer), filed a petition under the Land Use Petition Act (LUPA)[1] in superior court, which reversed the hearing examiner's decision. The Garrisons ask us to reverse the superior court's decision and remand for reinstatement of the hearing examiner's decision,[2] asserting that the LUPA petition was untimely and that their rights had vested in 2004 when their application was completed, filed with Pierce County (County), and a permit was issued. We hold that the Garrisons' 2004 building application was complete as a matter of law under RCW 36.70B.070(4)(a), vesting their rights under the laws and regulations in effect in 2004. Thus, the hearing examiner did not err, and we affirm the hearing examiner's decision.

FACTS
¶ 2 In December 2002, the Garrisons purchased waterfront property on Henderson Bay in Gig Harbor, Washington. The property contained an open drainage course. In 2003, the Garrisons cleared trees and vegetation from the property until neighbors complained and Pierce County issued a stop work order because the clearing activity was near the drainage course. With the County's supervision and approval, the Garrisons took steps to revegetate the area with native plants.
¶ 3 In March 2004, the Garrisons submitted a building permit application to the County, which granted the permit. The Garrisons *542 began constructing a new residence on the property, but the County issued a stop work order in October 2004 when neighbors complained that the foundation poured for the new house encroached in a stream buffer. The stop work order included a corrective action notice directing the Garrisons to apply for a fish and wildlife variance within 60 days.
¶ 4 The Garrisons appealed the stop work order to a hearing examiner, who denied the administrative appeal on February 4, 2005, and the Garrison's subsequent request for reconsideration on March 18, 2005. The Garrisons filed a LUPA appeal, which settled and resulted in the Garrisons pursuing the fish and wildlife variance presently at issue.
¶ 5 On August 9, 2007, the Garrisons filed an application for a fish and wildlife variance. At the October 24, 2007, variance application hearing, witnesses included Mike Garrison, Louise Lauer, and Darrell de Tienne.
¶ 6 On December 13, 2007, the hearing examiner approved the Garrisons' variance, applying the regulations in effect when the Garrisons filed their building permit application in 2004. On December 21, Lauer filed for reconsideration. On March 4, 2008, the hearing examiner denied Lauer's reconsideration motion.
¶ 7 On March 27, 2008, Lauer filed a LUPA petition in the superior court, seeking review of the hearing examiner's determination. The Garrisons filed a motion to dismiss and strike Lauer's claims, which the superior court denied. The superior court reversed the hearing examiner, holding that the Garrisons' 2004 building permit application was incomplete and did not vest development rights, and remanded to the hearing examiner for consideration of the variance application applying regulations in force in 2007. The Garrisons unsuccessfully moved for reconsideration based on Futurewise v. W. Wash. Growth Mgmt. Hearings Bd., 164 Wash.2d 242, 189 P.3d 161 (2008), which our Supreme Court decided only days before the superior court heard the LUPA appeal.
¶ 8 The Garrisons filed a notice of appeal seeking review of three superior court orders: the order denying the Garrisons' motion to dismiss, the order reversing the hearing examiner's decision in the LUPA appeal, and the order denying the Garrisons' motion for reconsideration. While the appeal was pending, and after briefing had been submitted, we decided Mellish v. Frog Mountain Pet Care, 154 Wash.App. 395, 225 P.3d 439 (2010).[3]

ANALYSIS

I. Standard of review
¶ 9 LUPA governs judicial review of Washington land use decisions. HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 467, 61 P.3d 1141 (2003). We review the factual record before the hearing examiner, as the hearing examiner is the local jurisdiction's body or officer for this case with the highest level of authority to make a land use determination. See Pierce County Code (PCC) 1.22.080(A), (B)(1)(i), (s). "All land use decisions of the Examiner ... shall constitute the final decision of the Council and shall be appealable to a court of competent jurisdiction." PCC 1.22.140(C); see also former RCW 36.70C.020(1) (1995); Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs., 151 Wash.2d 279, 288, 87 P.3d 1176 (2004); HJS Dev., Inc., 148 Wash.2d at 468, 61 P.3d 1141; J.L. Storedahl & Sons, 125 Wash.App. at 6, 103 P.3d 802.
¶ 10 Lauer, as the LUPA petitioner, continues to carry the burden of establishing that the hearing examiner erred under at least one of LUPA's six standards of review. See Pinecrest Homeowners Ass'n., 151 Wash.2d at 288, 87 P.3d 1176. These standards are:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction *543 of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
Former RCW 36.70C.130(1) (1995). We review questions of law de novo to determine whether the facts and law supported the land use decision. HJS Dev., 148 Wash.2d at 468, 61 P.3d 1141. On review of a superior court's land use decision, we stand in the shoes of the superior court and review the administrative decision on the record before the administrative tribunalnot the superior court recordreviewing the record and the questions of law de novo to determine whether the facts and law support the land use decision. Satsop Valley Homeowners Ass'n, Inc. v. Nw. Rock, Inc., 126 Wash.App. 536, 541, 108 P.3d 1247 (2005).

II. Threshold matters
¶ 11 At the outset, the Garrisons argue two threshold matters and contend that either is dispositive. First, they assert that the Supreme Court's recent Futurewise decision renders Lauer's LUPA petition moot and, therefore, the superior court should have dismissed the petition. Second, they argue that under this court's recent Mellish decision, Lauer's LUPA petition is untimely and dismissal is required. Neither of these arguments is persuasive under the facts of this case.

A. Futurewise

¶ 12 The Garrisons rely on the lead opinion in Futurewise, which determined that "[c]ritical areas within the jurisdiction of the [Shoreline Management Act (SMA) ][4] are governed only by the SMA." Futurewise, 164 Wash.2d at 245, 189 P.3d 161. The Garrisons argue that, since only the SMA governs their shoreline property, the variance requirement under the County's critical areas ordinance, which was adopted under the Growth Management Act (GMA),[5] is inapplicable. See e.g., PCC 18E.10.010. The Garrisons argue that under Futurewise, no GMA buffer requirements apply, no variance is required, and the issue of whether their rights vested in 2004 or 2007 is of no moment.
¶ 13 But the Garrisons' reliance on Futurewise is misplaced. Only four justices signed the lead opinion, with a fifth justice concurring in the result only without issuing an opinion. Such a plurality opinion has "`limited precedential value and is not binding.'" Kailin v. Clallam County, 152 Wash. App. 974, 985, 220 P.3d 222 (2009) (quoting In re Pers. Restraint of Isadore, 151 Wash.2d 294, 302, 88 P.3d 390 (2004)). There being "`no majority agreement as to the rationale for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds.'" Kailin, 152 Wash.App. at 985-86, 220 P.3d 222 (internal quotation marks omitted) (quoting W.R. Grace & Co. v. Dep't of Revenue, 137 Wash.2d 580, 593, 973 P.2d 1011 (1999)). Accordingly, we glean no precedential rule from Futurewise, other than that it reversed the trial court and reinstated the Western Washington Growth Management Hearings Board's decision. See 164 Wash.2d at 248, 189 P.3d 161.
¶ 14 Moreover, apparently in response to Futurewise, the legislature passed Engrossed House Bill, Laws of 2010, chapter 107, effective March 18, 2010, which addressed the 2003 legislation that our Supreme Court interpreted in Futurewise, for the express purpose of "clarifying the integration of shoreline management act policies with the growth management act." Laws of 2010, ch. 107 pmbl. In a new section, the legislature "affirms that development regulations adopted under the growth management act to protect critical areas apply within *544 shorelines of the state as provided in section 2 of this act." Laws of 2010, ch. 107, § 1(2). The act states that its provisions are to take effect immediately, that its purpose is "remedial and curative," and that it applies retroactively to July 27, 2003. Laws of 2010, ch. 107, §§ 5-6. Although the legislature's ability to retroactively modify the law in response to appellate decisions in this instance is not yet decided,[6] the Garrisons' contention based on Futurewisethat only SMA provisions apply to their shoreline property, fails.

B. Mellish

¶ 15 The Garrisons also contend that Mellish is dispositive of Lauer's LUPA appeal. Mellish addressed application of LUPA's strict 21 day filing deadline. See RCW 36.70C.040(2), (3). In Mellish, after the hearing examiner issued his land use decision, the petitioner filed a motion for reconsideration. 154 Wash.App. at 398-99, 225 P.3d 439. After the examiner denied the motion, the petitioner filed his LUPA appeal with the superior court. Mellish, 154 Wash. App. at 399, 225 P.3d 439. As in this case, the LUPA appeal in Mellish was filed within 21 days of the examiner's decision on petitioner's motion for reconsideration, but not within 21 days of the examiner's decision on the land use matter. 154 Wash.App. at 399, 225 P.3d 439. In Mellish, we held that the examiner's land use decision was final, that the subsequently filed motion for reconsideration did not render the examiner's decision not final while the reconsideration motion was pending with the examiner, that a reconsideration motion does not toll the deadline for filing a LUPA appeal, and that the petitioner's LUPA appeal was time barred. 154 Wash.App. at 403-04, 407, 225 P.3d 439.
¶ 16 The Garrisons argue that the same result should apply here.
LUPA's statute of limitations begins to run on the date a land use decision is issued. The statute designates the exact date a land use decision is "issued," based on whether the decision is written, made by ordinance or resolution, or in some other fashion. When a land use decision is written, it is issued either three days after it is mailed or on the date that the local jurisdiction provides notice that the decision is publicly available.
Habitat Watch, 155 Wash.2d at 408, 120 P.3d 56 (citations omitted).
¶ 17 Here, the hearing examiner's written decision was dated December 13, 2007; the decision cover letter stated that it was transmitted to the Garrisons, Lauer, and to other interested persons on that date.[7] Under RCW 36.70C.040(4)(a), the hearing examiner's written decision issued on December 16, 2007, triggered the 21 day LUPA petition filing period. Lauer did not file the LUPA petition until March 27, 2008, more than 100 days after the land use decision issued. Accordingly, Lauer's LUPA petition was time barred. See Mellish, 154 Wash.App. at 407, 225 P.3d 439.
¶ 18 Lauer argues that even if Mellish applies, we should remand for a factual hearing so that the parties can create a record on the issue of equitable tolling. In Mellish, we sua sponte raised the possibility that equitable tolling might apply to a case addressing the LUPA appeal deadline "when justice requires such tolling." 154 Wash.App. at 405, 225 P.3d 439. But Mellish acknowledged that equitable tolling is an extraordinary remedy and declined to apply the doctrine under the facts of the case at issue. 154 Wash.App. at 405-06, 225 P.3d 439.
¶ 19 More recently, in Nickum v. City of Bainbridge Island, 153 Wash.App. 366, 381-82, 223 P.3d 1172 (2009), we rejected a party's assertion that the LUPA deadline may be equitably tolled. "The LUPA deadline controls access to the trial court's jurisdiction *545 over LUPA appeals ... and, thus, cannot be equitably tolled." Nickum, 153 Wash.App. at 381, 223 P.3d 1172. We explained:
RCW 36.70C.040(2) clearly states that "[a] land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served." Although the statute does not use the word "jurisdiction," the legislature's use of the phrases "is barred" and "may not grant review" demonstrate the legislature's intent to prevent a court from considering untimely filings.
Nickum, 153 Wash.App. at 381, 223 P.3d 1172 (alteration in original). See also Keep Watson Cutoff Rural v. Kittitas County, 145 Wash.App. 31, 37-38, 184 P.3d 1278 (2008) (LUPA filing deadlines and service on the proper parties are "jurisdictional requirements"), review denied, 165 Wash.2d 1013, 199 P.3d 410 (2009). Noting that numerous opinions have confirmed that the 21 day LUPA deadline is "absolute," we concluded that LUPA's time-of-filing requirements control access to the superior court's substantive review of any LUPA decision, thus the failure to timely file an appeal prevents court access for such review, and further a party's arguments "urging equitable tolling cannot be considered." Nickum, 153 Wash.App. at 382, 223 P.3d 1172. Consistent with Nickum, we hold that equitable tolling is not available in this case.
¶ 20 Lauer also counters in her supplemental briefing that Mellish is not dispositive because the Garrisons failed to raise an appropriate timeliness issue at the initial hearing in the superior court as RCW 36.70C.080 requires. We agree.
¶ 21 The statute provides that listed defenses including "untimely filing or service of the petition" are "waived" if not raised by a timely motion at an initial hearing on jurisdictional and preliminary matters following the filing of a LUPA appeal. RCW 36.70C.080(3). Here, the Garrisons filed a motion to dismiss Lauer's LUPA petition, citing RCW 36.70C.080 and asserting in part that the petition was untimely. Additionally, they cite to RCW 36.70C.040(2) stating, "LUPA proceedings are `barred' if the Petitioners fail to timely file a petition before this Court." Clerk's Papers at 42. The focus of the Garrisons' timeliness argument, however, was not the filing date of the petition itself. Not having the benefit of Mellish,[8] the Garrisons presented a timeliness argument, based on their contention that Lauer failed to exhaust all administrative remedies and, thus, lacked standing to pursue her LUPA appeal. That is, the Garrisons argued that Lauer failed to challenge the Garrisons' 2004 building permit application or the County's issuance of the Garrisons' 2004 building permit in 2004. Thus, Lauer was barred from arguing in the present matter (i.e., the LUPA appeal of the hearing examiner's 2007 decision granting the Garrisons a fish and wildlife variance) and that the Garrisons' 2004 building permit application was not complete and did not operate to vest their rights in regulations existing in 2004. In other words, the Garrisons argued that Lauer's collateral attack on the 2004 permit was untimely. But this was insufficient to preserve the issue of timeliness regarding the 21 day filing period for appeal of the hearing examiner's 2007 decision approving the Garrisons' fish and wildlife variance. As RCW 36.70C.080(3) requires, any timeliness challenge to a LUPA petition is waived if not raised at the initial hearing following the filing of the LUPA petition. Accordingly, we hold that the Garrisons waived their timeliness challenge to Lauer's LUPA petition by not asserting that specific timeliness challenge at the initial hearing.

III. Merits
¶ 22 In reaching the merits of Lauer's and the Garrisons' claims, we determine that one issue is dispositive: whether the Garrisons' 2004 building permit application was complete by operation of law. We hold that it was.

*546 A. "Completeness" of the 2004 Permit Application
¶ 23 The issue before the hearing examiner was whether the Garrisons' 2007 application for a fish and wildlife variance should be granted. Essential to that decision was a determination regarding which regulations or criteria applied to the 2007 variance application. At the hearing on the variance application, Lauer's attorney contended that the Garrisons' 2004 building permit application contained misrepresentations and, as a result, it was incomplete and the Garrisons' building project was not vested based on the regulations in place in 2004. Accordingly, Lauer argued that the more stringent regulations that were in place in 2007, when the Garrisons filed their variance application, should be applied.
¶ 24 The hearing examiner rejected Lauer's argument, applied the 2004 regulations, and granted the variance with conditions. The hearing examiner's finding on the issue of stream depiction and the allegations that the Garrisons misled the County stated:
Neighboring property owners argued that the Vested Rights Doctrine should not apply in this case because the applicants have unclean hands. It is undisputed that the applicants submitted a building permit application in 2004. It did not acknowledge that a stream existed on the property and that there were associated buffers. This does not mean that they come to this hearing with unclean hands. The variance application would have applied standards in effect at the time of the building permit application whether or not a stream was notated [on] the building permit application or not.
Administrative Record (AR) at 36.
¶ 25 The record suggests an honest variety of viewpoints in 2004 about how the drainage course on the Garrisons' property was to be characterized.[9] Reflecting that state of affairs, the site plan that the Garrisons submitted with the building permit application in 2004 does depict the drainage course traveling through the property and leading to a culvert, clearly labeled on the site plan, in the bulkhead/sea wall near the shoreline. Although the site plan does not expressly label the watercourse as a stream, the depiction of the contoured topography nevertheless shows the path of the watercourse leading to the bayside culvert.
¶ 26 Moreover, the record reflects that the County was aware of the drainage course's existence in 2004, as evidenced by the series of letters from the County to the Garrisons in 2003 regarding the Garrisons' efforts to revegetate the "drainage course." AR at 176. The County's environmental biologist, Scott Sissons, who testified at the hearing, visited the site before the Garrisons submitted the 2004 building permit application. Thus, the *547 record shows that the County was familiar with the site and knew about the drainage course depicted on the site plan when the Garrisons submitted their 2004 building permit application. That the County then granted the permit shows that it accepted the application as complete, with the water course channel as depicted. Thus, based on the record, substantial evidence supports the hearing examiner's determination and he did not err in concluding that the Garrisons' 2004 permit application was complete and that they did not knowingly misrepresent salient features of the site and affirmatively mislead the County.

B. Vesting Following Completeness as a Matter of Law.
¶ 27 Furthermore, RCW 36.70B.070(4)(a) addresses completeness of permit applications, which, in turn, determines the vesting of applicable regulations. As our Supreme Court has explained:
Under [the vested rights] doctrine, developers who file a timely and complete building permit application obtain a vested right to have their application processed according to the zoning and building ordinances in effect at the time of the application. The Washington doctrine protects developers who file a building permit application that (1) is sufficiently complete, (2) complies with existing zoning ordinances and building codes, and (3) is filed during the effective period of the zoning ordinances under which the developer seeks to develop.
West Main Assocs. v. City of Bellevue, 106 Wash.2d 47, 50-51, 720 P.2d 782 (1986).
¶ 28 The common law vested rights doctrine is codified at RCW 19.27.095.[10] This statute "establishes the `date certain' standard for vesting[, which is] the filing date of a [complete] building permit application." Abbey Rd. Group, LLC v. City of Bonney Lake, 167 Wash.2d 242, 260, 218 P.3d 180 (2009). The statute also "leaves to the local authority the determination of when a building permit application is `fully complete[].'" Abbey Rd. Group, 167 Wash.2d at 258, 218 P.3d 180 (alteration in original) (quoting RCW 19.27.095(2)).
¶ 29 As for the "completeness" determination, RCW 36.70B.070 additionally provides in pertinent part:
(1) Within twenty-eight days after receiving a project permit application,[[11]] a local government ... shall mail or provide in person a written determination to the applicant, stating either:
(a) That the application is complete; or
(b) That the application is incomplete and what is necessary to make the application complete.
....
(2) A project permit application is complete for purposes of this section when it meets the procedural submission requirements of the local government and is sufficient for continued processing even though additional information may be required or project modifications may be undertaken subsequently. The determination of completeness shall not preclude the local government from requesting additional information or studies either at the time of the notice of completeness or subsequently if new information is required or substantial changes in the proposed action occur.
....
(4)(a) An application shall be deemed complete under this section if the local government does not provide a written determination to the applicant that the application *548 is incomplete as provided in subsection (1)(b) of this section.
....
¶ 30 Only one published decision addresses RCW 36.70B.070(4)(a). In Schultz v. Snohomish County, 101 Wash.App. 693, 701, 5 P.3d 767 (2000), Division One rejected the argument that a local government's failure to respond to an applicant within the time period noted in subsection (1) results in automatic approval of the application. "RCW 36.70B.070(4)(a) ... directs only that an application `shall be deemed complete' if the government does not provide a written response to the applicant within the relevant time period." Schultz, 101 Wash.App. at 701, 5 P.3d 767. Schultz reiterates the statute's plain language that where a local government in receipt of a building permit application does not provide written notice to the applicant within 28 days that the application is incomplete, the application is deemed complete as a matter of law. Here, there is no indication in the record that the County ever provided such notice to the Garrisons. To the contrary, the County granted their building permit. Accordingly, as a matter of law, the Garrisons' 2004 building permit application was complete in 2004 and vested their rights to application of regulations in effect at that time.
¶ 31 We hold that the Garrisons' 2004 building permit application was complete as a matter of law under RCW 36.70B.070(4)(a), that substantial evidence supports the hearing examiner's decision, and that the decision was not erroneous as a matter of law; thus, the Garrisons are entitled to the fish and wildlife variance, enabling them to proceed with construction of their home.[12] The hearing examiner's opinion is affirmed and reinstated.
We concur: BRIDGEWATER and HUNT, JJ.
NOTES
[1] Chapter 36.70C RCW.
[2] Because we review only the record before the hearing examiner, we review the hearing examiner's decision and not the trial court's decision. J.L. Storedahl & Sons, Inc. v. Cowlitz County, 125 Wash.App. 1, 6, 103 P.3d 802 (2004).
[3] We initially released Mellish on December 15, 2009, but we withdrew it and rereleased it on February 3, 2010, following reconsideration, after allowing both parties to submit supplemental briefing.
[4] Chapter 90.58 RCW.
[5] Chapter 36.70A RCW.
[6] This court recently applied the plurality decision in Futurewise when deciding Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 152 Wash.App. 190, 191, 217 P.3d 365 (2009), remanded, 168 Wash.2d 1031, 231 P.3d 166 (2010). On April 28, 2010, our Supreme Court remanded the case to this court for reconsideration.
[7] The copy of the hearing examiner's decision attached to Lauer's request for reconsideration is stamped (presumably by Lauer's attorney's office) "Received Dec. 14, 2007." Clerk's Papers at 13.
[8] The Mellish court acknowledged that before its decision, reasonable practitioners and litigants may have concluded that filing a reconsideration motion gave them more time to file a LUPA appeal. See 154 Wash.App. at 407, 225 P.3d 439.
[9] The administrative record in the present matter contains a report by the County's Department of Planning and Land Services staff. Attached to that report is the hearing examiner's decision in a prior appeal in which the Garrisons challenged the County's October 2004 stop work order. The report's summary notes in part:

This parcel has a drainage course located in the southwestern portion of the site. This drainage course discharges onto this parcel from the west through a culvert. The drainage course located on the parcels to the west was legally placed into an underground culvert system back in the early 1980s when the property was short platted.... On October 2, 2004, Pierce County Resource Management issued a Correction Notice/Cease and Desist Order and Stop Work Order and suspended Building Permit #383860 for building within a 35-foot stream buffer. The owners appealed this Correction Notice/Cease and Desist Order (AA9-04), and contended that the subject watercourse should not have been on their parcel at all and should have been tightlined to Henderson Bay by the conditions of the previously approved adjacent short plat. The Pierce County Hearings Examiner denied the Administrative Appeal on February 4, 2005 and a Request for Reconsideration was also denied on March 18, 2005.
Therefore, the applicant has now applied for a fish and wildlife variance to allow the existing single-family residential foundation to remain within the 35-foot buffer and to construct a pervious path in accordance with Pierce County Code Title 18E, effective February 2, 1992, under which the building application was vested. The applicant intends to construct a pervious path for purposes of private access to the shoreline. A portion of the path lies within the habitat buffer area. Under the new Critical Areas Regulations Title 18E, known as "Directions" (Effective March 1, 2005) a 65-foot buffer would be required.
AR at 44.
[10] RCW 19.27.095 provides in relevant part:

(1) A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.
(2) The requirements for a fully completed application shall be defined by local ordinance.
[11] "`[P]roject permit application' means any land use or environmental permit or license required from a local government for a project action, including ... building permits." RCW 36.70B.020(4).
[12] Because this holding is dispositive, we need not reach other issues such as the Garrisons' assertion that Lauer lacked standing to pursue a LUPA appeal or that Lauer was estopped from challenging the Garrisons' vested rights.